# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**JOSE F. GONZALEZ SANTIAGO**
**Plaintiff**                                    Civil Case No.  11-1928

v.

**McNEIL HEALTHCARE LLC.**            Trial by Jury Requested
**Defendant**

## COMPLAINT

**TO THE HONORABLE COURT:**

   **NOW COMES, JOSE F. GONZALEZ SANTIAGO**, through the undersigned attorneys, and very respectfully state, allege and pray:

### JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this court by 28 U.S.C. §1331, and §1332.

2. Venue is proper pursuant to 28 USC §1391(a)(2) inasmuch as all of the facts, events giving rise to the claims occurred within the Commonwealth of Puerto Rico.

### PARTIES

3. The plaintiff in this case Jose F. Gonzalez Santiago, is a natural person who resides in Bayamón, Puerto Rico.

4. The defendant in this case McNeil Healthcare LLC, is a corporation, incorporated in a foreign jurisdiction, and its corporate parent is Johnson & Johnson.  Its operations in Puerto Rico employ in excess of five hundred employees.  Its Puerto Rico operations address is Rd. 183 Km. 19.8, Bo. Montones, Las Piedras, PR 00771.

## FACTS

5. The plaintiff in this case, Jose F. Gonzalez Santiago and hereinafter referred to as Gonzalez, is 57 years of age as of the facts pertinent to this claim.

6. Mr. Gonzalez commenced working with McNeil Healthcare LLC, also known or identified in the relevant documents as Johnson & Johnson – McNeil Healthcare LLC and also as McNeil Consumer, hereinafter referred to as McNeil, in July 14, 2008 as a Quality Assurance Supervisor in the third shift, where he was working supervising working overseeing quality assurance in the packaging assembly line and compiling and producing statistics related to that line.  His duties included continuing the workplan referred by the second shift.  He would also review the packaging logs, the components used, and would also

give support to the incoming area overseeing and analyzing that ths shipper and bottles were correctly set.  He would also oversee the granulation, compression, coating and printing, and geldipping and rotor areas logs.  He would audit manufacturing performance in all of these areas, and would also investigate matters as they arised.  He would also refer personnel for disciplinary measures.

7. Mr. Gonzalez supervised 8 individuals in the third shift.

8. In January 2010 Mr. Gonzalez was transferred to the first shift, where he supervised fourteen individuals.

9. In the first shift Mr. Gonzalez would perform essentially the same duties as in the third shift.  However, related to packaging in that he was also in charge of the destruction or disposition area.

10. Gonzalez was separated from his employment on June 8, 2010.

11. He filed a complaint before the Anti-discrimination Unit of the Puerto Rico Department of Labor on February 22, 2011 and was issued a letter allowing him to pursue a claim before this Court on June 23, 2011.

12. His supervisors were Mayra Pujals and Saribel Estrada.

13. Mr. Gonzalez was initially put on a performance improvement plan on April 14, 2010, and later was suspended in May 10, 2010,

pending further investigation. On that same date Gonzalez availed himself of the procedures available at McNeil to notify management of his side of the story and ask for a fair and just opportunity to expose his case before a management decision was taken. Mr. Gonzalez was eventually separated from employment at the date stated above.

14. Mayra Pujals, referred to as Pujals hereinafter, neglected her duties towards the plaintiff since the beginning of plaintiffs employment.

15. Employees would make fun of plaintiff, saying that plaintiff was an old drunkard, that he would come to work intoxicated with alcohol, and that he was a Don Juan. These comments were provoked by Damaris Hernandez, who became infuriated when she learned that the plaintiff would start work on the third shift and earned more than her. Damaris Hernandez prompted Liza Fernandez to present grievances against the plaintiff for alleged lewd behavior that the plaintiff should exhibit because of his age. Plaintiff demanded that these comments would be stopped and although she investigated, Pujals failed to inform the plaintiff of the results of her investigation. So, the plaintiff had to work alongside individuals who questioned his leadership because of his age, and Mrs. Pujals tolerated this situation.

16. Additionally, Mrs. Daisy Aguilar, the Human Resources Director, investigated plaintiff's working punch ins and outs during the

months of January through July 2009. Aguilar that plaintiff be reprimanded for allegedly keeping irregular hours. Pujals purposefully neglected to clarify that plaintiff had to assist to trainings and meetings that occurred during the first shift, and for these, Pujals required his presence and authorize a change in the working hours. However, the situation resulted in several months of intimidation and harassment against the plaintiff.

17. The McNeil manufacturing plant had several deficiencies, such as cross-contamination between packaging lines, excessive particulate found in the Rolaids line, unclean and unfit plastic packaging lines that had not been replaced for as long as twelve years, amongst others. The plaintiff continually pointed out these situations and manifested that quality assurance performance was hindered by these situations.

18. On August 2009 Saribel Estrada arrived as Site Quality Leader, and plaintiff was asked to form an inventory of these deficiencies by Mayra Pujals. Plaintiff proceeded to document all of these deficiencies. After the plaintiff finished these tasks and handed in his findings, he was transferred to the Compliance area, to a position as compliance specialist, and was ordered to train himself by reading manuals and materials pertaining to compliance.

19. After the brief stint, plaintiff was ordered back to his duties as third shift supervisor.

20. Commencing on or about January 2010, a business manager, named Michael Alvarado would interrogate the plaintiff whenever Alvarado found plaintiff working the day-shift, the first one. Alvarado would then continuously and unjustifiedly complain regarding plaintiff's performance, behavior, and even the fact that he was assigned to work in the first shift. The plaintiff would point out that reviewing the lots produced by Alvarado's team was time consuming because Alvarado would not observe protocol and would produce inappropriately documented protocols. Alvarado would also ask its personnel to overlook errors in packaging in order to cut the lead time of the product to the shelves. This would be detected and pointed out by the plaintiff.

21. Alvarado would complain directly to Saribel Estrada, and not to plaintiff immediate supervisor, Mrs. Pujals.

22. On February 2010 plaintiff was ordered to assist Alvarado in the creation of a reprocessing protocol for a lot taken out of market. This was a monumental task, and after being assigned to work alongside Yodalis Torres, plaintiff was eventually left alone. Mr. Alvarado then engaged in a pattern of calling the plaintiff at irregular hours in the weeking and after his shift had concluded, to demand that the protocols

be worked upon at any and all hours available to plaintiff. The justification was that these protocols were very important and the lot was soon to arrive at the plant. Nonetheless, top management canceled the reprocessing order on March 2010.

23. However, the plaintiff would continue to point out several manufacturing and packaging tendencies and practices that were unfit, and inappropriate. Inspections were correctly or timely performed, mechanics were not timely tested, operators' performance would not be correctly overseen, overworking of the first shift in packaging, and deviations were not being correctly reported. As a result Pujals and Estrada commenced to deliberately derail the plaintiff's work by impeding his inspections, and blocking his access to materials under investigation, even though no specification for the restriction existed. The plaintiff would also be held responsible for situations, investigations and other personnel delays without any explanation whatsoever.

24. Plaintiff was the object of ridicule in staff meetings as personnel commenced to make fun of the plaintiff on or around August 2009. Estrada and her underlings started calling the plaintiff antiquated and obsolete and that his attention to detail and protocol in his managerial style was outdated. However, no training   They would not deliberate with him on matters that directly affected his duties. They also

transferred the plaintiff from the third to the first shift; thereby increasing his duties without giving him proper training, no opportunity to learn the new skills demanded made from him, and no support whatsoever.

25. Gonzalez was substituted in his position by José Hernández who was 39 years of agoe approximately. Additionally, the supervisors in the packaging quality assurance team were all substituted by individuals who were between 28 and 39 years of age.

26. Mr. Gonzalez also timely interrupted all applicable statute of limitations for state and federal law claims.

## CLAIMS AND CAUSES OF ACTION

**Age and race discrimination.**

27. The actions by the officers at McNeil were discriminatory in nature.

28. Gonzalez is within the protected groups for age discrimination.

29. The acts narrated above constitute discrimination prohibited by the Age Discrimination in Employment Act, 29 USC §623.

30. Law 100, 29 LPRA §146; prohibits discrimination based on age.

31. The officials at McNeil treated plaintiff in a manner consistent with a pattern of discrimination motivated by Mr. Gonzalez's age.

32. The termination of Mr. Gonzalez was motivated by his age.

33. Such conduct is discrimination pursuant to the definition of the above-mentioned statutes.

**Retaliation**

34. The plaintiff had availed himself of the investigative procedures put in place by the employer and had questioned the managerial decisions and the way and manner in which these had been delineated to affect only him.

35. His termination was motivated by the plaintiff's filing of initiation of the investigative procedure.

36. Mr. Gonzalez informed this fact to the Anti-discrimination Unit before the closing of the administrative investigation, and in any event, such claim was a reasonable consequence and grew-out of the filing of the charge of discrimination.

37. Such retaliation is prohibited by the Age Discrimination in Employment Act, 29 USC §623 as interpreted.

38. Law 115, 29 LPRA §194 prohibits retaliation based on the filing of charges before the administrative body.

39. Plaintiff's constructive or plain dismissal is prohibited by the above-named statutes.

**Workplace Harassment and Claims for Local Constitutional Violations**

40. Alternative to the above, and in addition to the unjust dismissal claim, the activities, actions, procedures and evaluations alleged above have no conscionable justification or relationship to legitimate workplace or social objectives.  The above-named individuals engaged into this conduct for the sole purpose of harassing Mr. Gonzalez and demeaning his sense of dignity and self-worthiness. Thus, these actions are not covered by the usual employer immunity from workplace injuries as they are not within the type of legitimate activity that justifies employer immunity.

41. The acts narrated above constitute workplace moral harassment or mobbing which is offensive to Article II of the Constitution of the Commonwealth of Puerto Rico, which operates *ex propio vigore* to impose liability against private parties for acts or omissions which result in injuries to dignity of individuals.  An employer may be liable for the acts of his or employees which constitute workplace harassment.  Moreover, the above-named individuals themselves would be personally liable for such Article II claims.  All of these

injuries may be addressed against private individuals through Article 1802 and Article 1803 of the Puerto Rico Civil Code.

42. The acts alleged above constitute workplace harassment for which the defendant is liable to the plaintiff.

## DAMAGES

1. Due to the prohibited acts, narrated above, the plaintiff has suffered emotional damages in the amount of $1,000,000.00.

2. Plaintiff has suffered physical and mental anguish in the amount of $1,000,000.00.

3. Plaintiffs request the imposition of economic damages in an amount no less than $1,000,000.00.

4. Plaintiff requests the imposition of double damages.

5. Due to the prohibited acts, narrated above, the plaintiff has suffered economic damages as follows:

   i. Loss of income - $160,000.00

   ii. Opportunity cost - $100,000.00

   iii. Interest attributable to consumer debt - $60,000.00

6. Pursuant to the above-named statutes the co-defendants are liable for attorney's fees and costs incurred in the litigation.

7. Jury demanded for trial.

**WHEREFORE**, it is respectfully requested from this Honorable Court that enters Judgment for the plaintiff in the amounts of damages and compensation set forth above.

**RESPECTFULLY SUBMITTED.**

**In San Juan, Puerto Rico, this September 20, 2011.**

IT IS HEREBY CERTIFIED: **that on this date the undersigned attorney was filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.**

>**90 Ave. Rio Hondo PMB 130**
>**Bayamon, PR 00961**
>**Tel. 787-647-6632**
>**Fax. 775-366-7629**
>
>S/ Julio C Alejandro S
>**JULIO CESAR ALEJANDO SERRANO**
>**USDC-PR 216602**
>alejandroj.abogadopr@gmail.com

C:\Documents and Settings\julio\My Documents\Downloads\Pepin\Amended Complaint (Repaired).doc